Please, the Court, my name is Billy Gibbons and I represent the Steffen family who are the plaintiffs in this case. This Court has held that to establish general jurisdiction when it's disputed, that a plaintiff need only to establish a prima facie case that general jurisdiction is proper when there is not an evidentiary hearing, as there was not in this particular case. And in doing so, the Court has to accept as true the uncontroverted allegations in the complaint. It has to resolve factual conflicts in favor of the plaintiffs and it may rely on affidavits. And in this case, the plaintiffs in their complaint alleged that jurisdiction was proper because of solicitation of business by the defendant in Texas. And when that was challenged, the plaintiffs offered affidavits in which Plaintiff Maria Frank described receiving affidavits and advertisements in the mail, receiving phone calls and e-mails soliciting her business on a regular basis. She described billboards and other advertisements that she saw all over Houston and even described the specific locations of some of them. She stated that she saw, on a regular basis, local commercials on local TV and radio and that she saw advertisements in the Houston Chronicle. We also submitted an affidavit showing that the defendant would provide transportation from residents from Houston to the LaBerge-Dulac Casino. Through a chartered bus line? Yes. Not through this corporation's buses? Right. They didn't provide it themselves, but they did advertise. How is this any different from – I'm trying to think of something. I think – how is this any different from these companies that advertise nationwide for you to travel to a resort in the Caribbean? Would they have specific jurisdiction in all 50 states? They advertise to all 50. Judge, I don't think nationwide advertising I don't think would confer general jurisdiction. But I think in this case what we've alleged and what the evidence supports is that it was targeted advertising to a local area. And there have been many cases that have held, and even in the casino context, that that type of – Are you referring to those district court cases you cite in your brief? Yes, sir, Your Honor. Aren't there about five circuits that have held against the position you're taking today? Judge, the Fifth Circuit in two cases that we have cited, Runnels and – I'm sorry. There's another one. But there are two Fifth Circuit cases that have relied on specific targeting advertising. These weren't – these were not casino cases, but two Fifth Circuit cases we've cited. Runnels is one of them where the Fifth Circuit has relied on local targeted advertising to support general jurisdiction. And I think, Judge Barstow, even in – if you look at the Goodyear case, the Supreme Court case, which was in the 28-J letter, which the defendants have suggested has – where the court has even limited – more narrowly limited general jurisdiction. If you look at that case carefully, what it says is that after Goodyear and Daimler, it hasn't expanded general jurisdiction beyond the traditional limitations. But even in Goodyear, they talk about – Goodyear says that in that case, the defendant did not solicit business or advertise in North Carolina, which is where the plaintiffs were trying to establish general jurisdiction. So I think the Supreme Court in Goodyear has acknowledged that specific targeting, specific targeted advertising is a valid basis for exercise of general jurisdiction. Do you have any case since Goodyear? Because I think it is recognized that that tightened up general jurisdiction. Do you have any case since Goodyear, district court, circuit, or otherwise, that has found general jurisdiction based on advertising? Judge, I don't have any where they have found it. But there's been – but in the cases where this issue has been discussed post-Goodyear, specific advertising and marketing is still discussed as a factor. And, for example, in Head, which is a casino case cited by the defendants, and also in Nelson, both of those cases are post-Goodyear, and both of those cases say that that advertising was not enough because it was – that was simply marketing to one particular, you know, I guess I would call it a high worth gambler who would get, you know, personal phone calls, personal emails. They would send a private jet to pick them up. And the courts have said that that is not enough because it's not continuous and systematic and widespread. But the discussion is still had in all of the cases that what you have to show is continuous and systematic context. And I don't think that Goodyear – because Goodyear did talk about specific targeting advertising. So I don't think that what the Supreme Court in that case intended to do was to say, you can't have general jurisdiction by specific targeting targeted advertising. They just said that in that case there was not. And really what those cases looked at were more of the – I mean, Goodyear was really, I think, a stream of commerce case where the general argument was, well, this defendant put something in the stream of commerce that ended up in North Carolina, and the court said that that is not enough. So I think that is how Goodyear tightened up general jurisdiction. But it says – and then Daimler a few years later says pretty clearly general jurisdiction is usually just going to be where you're incorporated, where you have your principal place of business. And then it acknowledges there's some extreme situations otherwise that might qualify. That's true. And I think, though, that Daimler – what Daimler said, though, too, Judge Costa, is that it – they said since international shoe we have not expanded beyond the traditional limitations. And I think since international shoe there are these cases, and all the cases that we've cited, which are pre-Goodyear, have discussed solicitation and advertising, targeted advertising as basis for general jurisdiction. So I think the question would be, are those still considered traditional bases for general jurisdiction? And I think because they are still discussed, even in the cases where the courts have said it's not targeted enough and it's not widespread enough to establish – marketing or advertising is not widespread enough, it's still a traditional basis. And so I would say that because of that, these casino cases that we have cited are still valid traditional bases for targeted advertising that would confer jurisdiction into a local area that is targeted. And that's what – and those cases that have found it are exactly what we have here, which is targeted emails, television ads. And really there's even a little bit more here because, I mean, there was some evidence submitted where the casino itself was saying, we built this for Texans. We're trying to get Texans to come here. Why aren't you arguing specific – oh, go ahead, Judge. No, you go ahead. Why aren't you arguing specific jurisdiction? Because there are cases out there where someone online or through a travel agent registers for a vacation in the Caribbean. Then they go down to the Caribbean, get hurt, and it says, well, since you've signed up in your home state, the events did arise out of those contacts with that state. I think, Judge, that we felt that that was a hard argument for us to make. And so we didn't make that argument. I mean, we've always relied on general jurisdiction and relied on the cases that – I guess the pre-Goodyear cases that are out there that we still believe are good law. And you correct me because I don't have your complaint memorized, but does the complaint reference or is there anything in the record we can use for this jurisdiction question reference that some of the advertising was done by the parent pinnacle as opposed to PNK? Judge, I don't think there's anything in the record that can – I mean, that was – that's – so what happened in the district court is we submitted that affidavit. The defendants submitted an affidavit, and that is at page 96 of the record, an affidavit by Elliot Hoops, who was with PNK. And there's no discussion in that affidavit about who created those ads. On appeal, they have said that we didn't establish that PNK was the one who engaged in the marketing and maybe it was some other entity, but we didn't have any discovery on that. And I think that – I mean, going back to these other casino cases, I mean, we make the allegations that the casino made the – did the advertising, and it's not rebutted. And really, it's not factually disputed that the ads and the billboards, et cetera, existed. That's not disputed. Since the case has gone on appeal, there's been an argument raised that, well, it was the parent company that did that and not PNK Lake Charles. But there's nothing in the record to support that, and there's been no discovery for us to be able to get into that or contest it because I do think that that could lead into what is another issue that was raised in Daimler, which is the parent-subsidiary relationship. But I don't think we're there yet, Your Honor, because I just don't think that there's – without any discovery on that, we don't know that it was not PNK Lake Charles. There were no depositions taken. We just have affidavits in the record? Yes, sir, just affidavits. And there was really not even a – there was a conference before the district court where some of this was discussed, but there was not an evidentiary hearing, and there wasn't really even an oral argument on the motion to dismiss for improper venue. But there was, in Judge Hughes' court in Texas, a full hearing insofar as presenting argument. It was at a conference, Your Honor. I mean, it was – I would not – In the record? Yeah, yeah. There is a transcript on the record where – I mean, it was a little bit more broad-ranging than just this issue. I mean, there was a discussion about the case in general and the allegations. So there is a record of that, and that is where there was some discussion about the advertisements that were submitted, and I think the lawyers who were present had provided a couple of other advertisements that they had seen. But the affidavits were filed in the record in the opposition to the motion to dismiss for improper jurisdiction. I mean, this matters because under the Louisiana law, you're out of time. Yes. The case gets dismissed. But I wonder – it seems to me even under Texas, I mean, if this were a Texas case filed in Texas court, federal court, they'll use Texas choice of law, which is the most significant relationship, and the injury happened in Louisiana, the alleged negligence happened in Louisiana. It seems to me you'd probably end up with the same result. Well, I think that's a good question, a complicated question. I would say that I can give you a case that I have found on that where – that I think says that Texas would apply Texas law for the statute of limitations. I mean, we didn't really brief that, but it's Cox v. McDonald, and I can get you the site on that, Your Honor. That's 161 F. 3rd, 915. It's an old case, but I do think that there is support that under – if this were in Texas, a Texas court would apply the two-year statute of limitations. So there would be a difference in the outcome if the case had not been transferred. Even though the tort occurred in Louisiana? Yes, sir. Yes, it happened in Lake Charles. That's interesting you'd call 161 F. 3rd an old case. That makes me a mighty old judge. 1982. I guess I wouldn't – I'll say middle age. No, F. 3rd didn't start until the 90s. Is it F. 2nd or F. 3rd? I don't know. I'm sorry. F. 3rd. It's 1982. I may have – I may have misspoken. It's F. 2nd, sorry, 1982. All right, Mr. Gibbons, you've got a few seconds later, but if you feel like you've made your lick on opening, you have reserved rebuttal time. Thank you, Your Honor. I'll reserve for rebuttal. All right. Thank you, sir. Mr. Mihalik. Good morning. May it please the Court. Good morning. My name is Andrew Mihalik. I represent PNK Lake Charles, LLC. Just to clear up a few preliminary issues that came up in that argument, by esteemed appellate counsel, PNK Lake Charles is a Louisiana-organized LLC. It holds a gaming license for the LaBerge Deluxe Casino. It has no business in Texas. It's not registered in Texas. And all that was set forth in an affidavit by Elliot Hooper, who was, I know at least at that time, a vice president of Pinnacle Entertainment, Inc., who was the original defendant sued in the case as doing business as LaBerge Deluxe. Now, reading the petition, it's clear this is a premises liability case. All the duties that have been alleged to have been breached were owed by a defendant as a premises owner, or they were couched in negligent training of employees in relation to the response to when Ms. Stephens unfortunately fell in the casino. And it's undisputed that all the salient facts and occurrences occurred in Lake Charles. When it comes to PNK Lake Charles's entry into the case, when this suit was filed in the 189th District Court of Harris County, Texas, it was promptly removed when PNK Lake Charles entered the case, and they informed the court that they were going to be filing a 12b-2 motion to dismiss Rwanda jurisdiction. The affidavit setting forth the particulars of PNK Lake Charles was filed with that 12b-2 motion, so it wasn't a response. It was up front the entire time. And it's been uncontroverted or unassailed throughout the case. I believe looking back at the record, the plaintiffs below, they acknowledged the mistake they made in bringing Pinnacle Entertainment, Inc. in their response to the motion to dismiss. And the finding that PNK was the proper defendant in the case was ultimately made by the report and recommendation of the magistrate judge in the Western District of Louisiana that was accepted ultimately by Judge Dowdy, I believe that's how you pronounce it, in the Western District when they granted summary judgment for PNK. So this has never been a case where PNK has conceded that it was the one who did the advertising or that had anything to do with the advertising. The simple fact of the matter is that the owner, operator, the casino, and holder of the license. When we get into the arguments of jurisdictional facts, what we were getting into was the cases are clear. You can't impute jurisdictional facts to an affiliate company. The plaintiff has the burden, prima facie or otherwise, to show sufficient jurisdictional facts as to each defendant. In this case, there's been no evidence to show that PNK, Lake Charles, LLC, has any contacts with the state of Texas. Going back to the Goodyear case. It's alleged in the complaint, isn't it? Pardon me, Your Honor? Doesn't the complaint allege all these contacts? Well, the complaint, if you look at the complaint very carefully, Your Honor, what I notice is that originally they labeled this Pinnacle Entertainment as a defendant. Then they have like a blank for another defendant of whoever controls the casino. When we came in and substituted the correct party and supported that with affidavit, then PNK is now the proper defendant in the case. The evidence and allegations, well, the evidence to support the allegations that they brought all pertain to what Pinnacle Entertainment did and has nothing to do with PNK, LLC. For example, when we look at the response to the motion to dismiss, the appellant's attached an affidavit of Ms. Stephan's daughter. And basically it boils down to two paragraphs. It's paragraphs five and six where she just generally talks about getting mails from the casino and that she saw a couple billboards and identified that one was on Kirby near the NRG Stadium. She doesn't say who she received these calls or solicitations from. She doesn't identify PNK. She doesn't even really identify Pinnacle. She just says LaBerge. And then the case law is clear that if you're going to try to bring an out-of-state defendant into a foreign jurisdiction, you have to allege sufficient facts to bring that to light that show that there's at least a prima facie case in an evidentiary hearing situation that support imposing that, especially in a case where the target defendant is not a Texas entity or has any business in Texas. Your argument was that even assuming all this advertising, it's not enough for general jurisdiction. Now it seems to be getting a lot messier if it all depends on which corporation did what, and that seems a lot messier factually. Well, Your Honor, I think what that just goes to is it shows that the plaintiff hadn't met their burden, even on a prima facie basis. But going to the evidence, when you're looking at— I just—I mean, it's in the complaint. I think we have to accept the allegations as true. So the question becomes, giving them all the benefit of the doubt, is all this advertising enough? Okay. Oh, and the answer to that, Judge, is no. Actually, one case I did—I brought up in a late supplement was a case that you handed down in Galveston, the C-drill case. In other words, those supplements are only supposed to be per the rule for cases that have come out after your briefing. Oh, I'm sorry. I'm glad the audience didn't see that distinction. But nonetheless, Judge, and I apologize if I violated that rule, you know, you stated in the case's whole that— Since you knew that he had written it, you thought he might enjoy reminding himself of something that he once said. Well, Your Honor, I mean, I'm not going to say that wasn't one of the considerations. But it doesn't change the fact that even on a private and facial case, a court is not bound by conclusory statements or affidavits, even if they're uncontroverted. And when we look at the affidavit of Ms. Frank, it just doesn't have the particularity that would be required to show that an out-of-state entity such as PNK is subject—has such a—it's a question. Is the continuous and systematic conducts are so much that they would feel at home in the forms of Texas. Are you arguing that the pleading is deficient in and of itself, or even assuming we take it in the light most favorably of the plaintiff, that as a matter of law, there's no jurisdiction? It sounds like you're talking more about the deficiency of the pleading and so forth, and maybe you're saying all of that. I'm not sure. Well, I think I'm saying all of that, Judge. I think I'm just—on every level, it's not sufficient. You know, as a prima facie case, you still—you look at the pleadings and then whatever else is available. They have—the only—the supporting evidence that they provided in their response, in addition to Ms. Stephan's affidavit, was an affidavit from one of their attorneys where they found stuff on the Internet. They cite to this Houston Chronicle article that quotes a representative from Pinnacle Entertainment. In 2005, the face of the article says that this casino hadn't even opened yet. So that in itself shows nothing about continuous and systematic to the degree that Goodyear requires, Dymer requires, or that even this court in Head v. Las Vegas Sands would require. You know, the next thing they cite to is a gaming commission printout that just confirms that PNK is the proper party because they do—they're the ones doing business as LaBerge. It shows nothing about continuous and systematic contacts. As discussed earlier by Judge Barksdale, the bus schedule, it's on the Internet under Moncton. The Internet is just—it's too slippery for—to use as a keystone for jurisdiction, but it ostensibly reaches across the United States. And it was just a listing of third-party providers that would—that someone could contract with to get bus service. It doesn't show that PNK has the sufficient, overwhelming, continuous, and systematic contacts that it would be at home in the form of the state of Texas. And so when you look at the evidence that they present to support this, it's just deficient. And at the end of the day, it's just a bare allegation that does not show enough particularity. One case that came out is a 2005 case, Southern District case. It's in the MGM case. And in MGM, it was a similar situation where you had a parent and a couple of subsidiaries. And that was—there was a big discussion about how you can't impute any contacts from one to another. You have to prove them up individually. But one thing I noted in the facts is that in that case, someone said they got calls like every month or something like that for two years. And of course, that's not sufficient. It's not systematic and continuous enough to put them at home in an out-of-state jurisdiction such as Texas. So no matter how you skin this cat, the conclusion is always going to be the same. PNK is not susceptible to general jurisdiction in Texas. The current jurisprudence in this case shows that you have to be so—your contacts have to be so much to where you'd feel at home in the state. And that just hasn't been done. Because it hasn't been done, the judge used correctly dismissed the case for one of general jurisdiction. And then when it went on to the Louisiana court, without jurisdiction, the Louisiana court correctly applied the law of prescription and granted summary judgment. You acknowledge we do have sort of a split—well, maybe not a split, but some district court cases that go both ways. Well, looking at the casino cases, I was focusing on the casino cases mainly because those are the cases they rely on so heavily, the appellants. They were all district court-level cases. There's still law out there. But they made kind of a bone to pick with the affirmation of the head case that it was unpublished, when two of those cases in the eastern district of Louisiana and one in the eastern district of Texas weren't published either. One was a magistrate opinion. Those are also border cases. So when it came down to the second problem, which is the traditional notions of fair play and substantial justice, I think it was an easier call once they figured out that the evidence showed that an out-of-state defendant actually got a telephone listing in the yellow pages, for example, or something like that. Again, that hasn't been shown in this case. But, you know, like one case happened on the bridge between Mississippi and Louisiana, so you really couldn't say, and that court found that the distances wasn't going to be an issue. Same thing when it comes to the eastern district of Texas and Lake Charles and the Alabama Cachado facility. Those cases were all kind of linked up together. They kind of adopted the findings in one to support the other back in 2005. And there's no mention of that third prong of Goodyear and Dianeworth. That's from International Sheer that says there has to be such extensive context to make them at home in the jurisdiction of the other state. And also from the record, there was particularized facts that were cited in those opinions that showed, I guess, facts supporting jurisdiction. And this case doesn't have that. Are any district court decisions finding general jurisdiction in the casino cases? Are any of them applying Goodyear? I believe this court applied Goodyear last year when they affirmed the head versus — I'm saying the cases the other side's relying on. Oh, I'm sorry. Said there's general jurisdiction. Have you seen any of those cases since Goodyear came out? Not the casino cases. I'm sorry, Judge. Not the casino cases. Those cases end, I think, in 2006 or 2007. And so it's before the Goodyear cases. So I have a lot of time left. And I hate to — it's not my nature to not want to talk more about stuff. But unless you have other questions, I guess I can concede my time back to the court. And I appreciate the opportunity to argue here today. Thank you for hearing the case. Thank you, sir. Mr. Givens. First, I just wanted to clear up, I think, one issue on P&K Lake Charles versus Pinnacle. I mean, we did initially sue Pinnacle erroneously. P&K Lake Charles was substituted as a defendant. We are not alleging that P&K Lake Charles is subject to general jurisdiction because of something that Pinnacle did. That is all something that has really kind of been created, you know, sort of after the fact on appeal. What our allegation is is that P&K Lake Charles did the advertising that they subjected themselves to general jurisdiction in Texas by reaching out to Texas residents. Now, it may be, you know — and it may be that if there's some jurisdictional discovery that it will be — you know, we may find out that there's something different there and there could be another issue. But this is not like the head case or the MGA case where we are alleging jurisdiction on one entity based on, you know, something another entity did. On the actual factual allegations, I think that it would be difficult to say that the facts as alleged — unless the law has changed to where advertising cannot be a basis for general jurisdiction anymore, the factual allegations, I believe, are sufficient that we've made. I mean, we have alleged advertising. We've been specific about what they have received, where some of these ads have run, the frequency of them. And so I don't think it's fair to say that, you know, that those allegations are flawed or failed or are insufficient. I think the real issue is, as the court has noted, whether or not advertising jurisdiction is still valid post-Goodyear and post-Daimler. And I would just — and I think on that issue, I would just go back to Goodyear. And what Goodyear talks about is that we are still going to rely on the traditional elements of general jurisdiction. And it goes through a discussion of some of those elements, which would be, you know, do they have employees? Is their headquarters there? Do they solicit or advertise there? So I still think that advertising and solicitation post-Goodyear is an element to be relied on and to be considered when determining whether a company has subjected themselves to general jurisdiction in the case. And I know that, you know, the casino cases are pre-Goodyear, but they're exactly on point to this case as far as what the factual allegations were. So I think that, you know, I think it's a difficult argument to make to say that the factual allegations are insufficient. And I think that what the question is is whether or not the post-Goodyear advertising is still sufficient. And we would say that it is because it's still a factor that's been considered. And the cases that, you know, both parties have cited where general jurisdiction has not been found to be established, they still consider advertising and they have said this particular advertising is not sufficient. Targeting one person going into a state and trying to recruit one person is not sufficient. But I don't think that takes away the previous cases in the law that says when it is widespread, continuous, and systematic, targeted at a locality that in that situation you are still subject to general jurisdiction. What is your allegation, either in a complaint or your statement in your affidavit, that this is targeted to the entire state of Texas as opposed to this is targeted to the Houston area or some more specific area than the entire state? In the affidavit at ‑‑ there are a couple of points on that, Judge. In Ms. Frank's affidavit, which is at 131 of the record, she talks about advertising in Houston. Now, in the affidavit that attaches some of the articles and some of the Internet publications, that's at 139 of the record, there's a pinnacle executive or a low‑barrier executive saying we designed this casino for Houston. So I think that what the evidence in the record supports is really more of a target to Houston as opposed to Texas in general. And there's really not ‑‑ I don't think there's much discussion or much evidence talking about Texas in general other than the bus schedules, which are on the website, do have other areas outside of Houston. I think there may be some El Paso stops and things like that. But for the most part, this is targeted towards Houston. And that is ‑‑ our position, Judge, is that this was ‑‑ the advertising, the targeting was towards Houston, intentionally targeting Houston because it's a very populous, very big, successful city that's close to the casino. But your argument would mean that even anywhere in Texas they'd be subject to suit. So in El Paso, someone who gets hurt at the casino in Louisiana, who's from Louisiana, could bring suit in El Paso if they liked that forum. That would be the consequence of your argument, right? Well, I think that that would be a ‑‑ if you're talking about jurisdiction, yes, it would. I mean, I think you may have another question there about whether or not venue is appropriate in that case. But I think that that result would be supported by Wilson and Gorman and all of the other, you know, the previous cases that they don't ‑‑ it's never been narrowed to a ‑‑ I mean, they look at targeting at a specific area. That's an important factor. But I don't think it could ever really be limited or has been limited to a particular, you know, city within a state or area within a state. We talked about the district court cases, some of which go either way, but there's no circuit court post Goodyear that have held in the way you're urging that just advertising alone would confer general jurisdiction. Is that right? I'm not sure if I could say that for any circuit, Judge. I know if ‑‑ I don't believe that the Fifth Circuit has ever, has held an advertising, that an advertising case confer general jurisdiction, you know, post Goodyear. I clearly haven't. I'm just looking in advance of the argument. I didn't find any circuits. I assume if you had one, you'd be arguing that there is one. So ‑‑ Yeah. I'm not aware of any, Judge. Okay. All right. Thank you. Thank you, Mr. Givens. Thank you, Mr. Mahalik. We will take the case as submitted on your briefs and arguments. Appreciate it. Thank you, Judge.